IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Maryanne Olynyk, M.D.,                                      Case No. 3:04CV7249

        Plaintiff

   v.                                                                ORDER

CRA Occupational Health, Inc., et al.,

        Defendants


      Plaintiff brings this suit under the Americans With Disabilities Act (ADA) alleging she was terminated because of her disability in violation of 42 U.S.C. § 12101, *et seq*. Plaintiff also brings a state law claim for breach of contract. This court has jurisdiction over plaintiff's ADA claim pursuant to 42 U.S.C. § 12117 and 28 U.S.C. § 1331 and over the state law claim pursuant to 28 U.S.C. § 1367.

      Pending are motions for summary judgment from defendants CRA Occupational Health, Inc. (CRA) and Daimler-Chrysler Corp. (DaimlerChrysler). For the reasons stated below, both motions shall be granted.

## Background

      Between January, 2001, and October, 2002, plaintiff was employed by CRA as a physician at DaimlerChrysler's Toledo, Ohio, plant. Under a medical staffing agreement, CRA provided

1

DaimlerChrysler with occupational physicians including the plaintiff.

As a plant physician, plaintiff examined and treated plant employees for work-related injuries and illnesses. She was not to provide medical services for non-occupational conditions except in an emergency. Plaintiff occasionally disregarded this restriction and released plant employees from work with non-occupational conditions. When DaimlerChrysler confronted plaintiff about this issue, plaintiff became argumentative with the DaimlerChrysler officials who instructed her to discontinue such activities.

Several doctors diagnosed plaintiff with bipolar disorder in the late 1980s, and in the mid-1990s, Dr. John Sawyer updated the diagnosis to depressive disorder. With medication, the disorder does not substantially limit her ability to function.

Plaintiff took medication during her employment with CRA at the DaimlerChrysler facility. Plaintiff disclosed her disorder to CRA officials during the interview process and to DaimlerChrysler officials shortly after she began her employment at the Toledo plant.

In late September, 2002, plaintiff believed that a plant employee had made or was making threats against her after plaintiff refused to impose medical restrictions on the employee's ability to perform assembly line work. The employee was hospitalized. DaimlerChrysler deactivated his security badge and instructed the hospital to provide notice to plaintiff when the employee was discharged. Plaintiff emailed CRA official Tom Burden to report the incident, who then contacted DaimlerChrysler to express his concern. In response, DaimlerChrysler official Tom Maxon met with plaintiff and ultimately ordered her to take the day off with pay.

Early the next morning, on October 1, 2002, at 2:43 a.m., plaintiff sent an email (the "Novena email") to Maxon. The email was personal in nature, and contained religious language and references to

2

a past incident with plaintiff's daughter and a disc jockey. Plaintiff also indicated in the email that she would

say "powerful" prayers for Maxon.

The content and tone of the Novena email concerned DaimlerChrysler officials, who forwarded

it to CRA. DaimlerChrysler and CRA decided that plaintiff should not report to the plant until the matter

was resolved. Both DaimlerChrysler and CRA officials spoke to plaintiff on October 2, but she refused to

acknowledge the inappropriateness of the Novena email. A CRA official asked plaintiff if the Novena email

could have been a product of her bipolar condition. Plaintiff denied the allegation and said she felt fine.

On October 3, 2002, DaimlerChrysler informed CRA that it no longer wanted plaintiff to provide

medical services at DaimlerChrysler facilities, effective immediately. This request triggered a termination

clause in plaintiff's contract with CRA.[1] Burden notified plaintiff of DaimlerChrysler's decision and her

termination on October 3, 2002. Plaintiff received official notice via overnight mail on October 4, 2002.

Plaintiff thereafter contacted the Equal Employment Opportunity Commission (EEOC), which had

her complete an intake questionnaire on July 31, 2002. Thereafter, plaintiff filed a formal charge with the

EEOC on September 16, 2003. She subsequently received a right to sue letter.

## Discussion

DaimlerChrysler seeks summary judgment on plaintiff's ADA claim on three grounds: 1) it was not

plaintiff's "employer" as that term is defined under the ADA; 2) plaintiff did not timely file her charge of

discrimination with the Equal Employment Opportunity Commission (EEOC); and 3) plaintiff's

---

[1]

The contract states in part: "[T]his Agreement is effective only upon receipt by CRA of notification of acceptance of PHYSICIAN by DaimlerChrysler Corporation. Should DaimlerChrysler Corporation rescind this acceptance by withdrawing privileges or denying admittance to the facility, this Agreement is terminated immediately." (Doc. 41-9 at 2.)

discrimination claim fails on the merits.

CRA, arguing that plaintiff's claim is time barred, and in any event, fails on the merits, has also moved for summary judgment on plaintiff's ADA claim. CRA additionally seeks summary judgment on plaintiff's breach of contract claim on the basis that CRA acted pursuant to its contractual rights.

### 1. Timeliness of Plaintiff's Filing with the EEOC

Both DaimlerChrysler and CRA challenge the timeliness of plaintiff's filing of a charge with the EEOC on two grounds: 1) plaintiff's EEOC filing was not within the 300-day statutory period; and 2) filing of the intake questionnaire did not satisfy the statutory requirements of filing a "charge" with the EEOC .

### a. Statutory Period

A charging party is required to file a charge of discrimination with the EEOC within 300 days after the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). Defendants argue that plaintiff's filings do not satisfy this requirement. Specifically, defendants contend that both the EEOC questionnaire filing on July 31, 2003, and the formal charge of discrimination filing on September 16, 2003, fell outside the 300-day statutory period. Plaintiff argues that the questionnaire filing satisfies all the requirements of a timely, formal charge of discrimination.

Defendants contend that the alleged unlawful act took place October 3, 2002, rendering the intake questionnaire, even if it constituted a "charge," time-barred since its filing took place 301 days later. Plaintiff argues that the limitations period did not begin until she received her official termination letter on October 4, 2002, 300 days prior to the filing of the questionnaire.

The limitations period for an employment discrimination claim begins to run "when the employer makes and communicates a final decision to the employee." *EEOC v. United Parcel Serv., Inc.*, 249 F.3d

4

557, 561-62 (6th Cir. 2001) (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)). Once

the employee knows or reasonably should know of the employer's decision, the limitations period begins.

*EEOC*, 249 F.3d at 562.

In this case, plaintiff received a letter on October 4, 2002, notifying her of her termination.  A CRA

representative, however, had informed plaintiff of her termination on October 3, 2002, and told her to

expect official notice via overnight mail the next day. Plaintiff argues that the conversation on October 3,

only informed her that she was being terminated, and that the actual termination occurred with receipt of

the letter October 4.

I disagree and do not find a meaningful distinction between the conversation on October 3, and the

letter received October 4. The limitations period begins when the employer communicates a final decision

to the employee. The CRA representative orally conveyed that decision to plaintiff on October 3. The letter

received on October 4 served as official confirmation of the termination, but plaintiff reasonably should have

known of the employer's decision after the conversation October 3. Thus the limitations period began on

that date.

Plaintiff argues alternatively that the doctrine of equitable tolling applies. Plaintiff contends that

approximately thirty days prior to her questionnaire filing, an EEOC representative indicated to her that the

limitations period began on the day she received her termination letter.

The 300-day period of limitations for filing a charge with the EEOC "is subject to waiver, estoppel,

and equitable tolling." *Amini v. Oberlin Coll.*, 259 F.3d 493, 500 (6th Cir. 2001) (citing *Zipes v. Trans

World Airlines, Inc.,* 455 U.S. 385, 393 (1982)).

Several courts have held that equitable tolling is appropriate where a late filing is the result of

5

misinformation provided by an EEOC agent. *See, e.g., Jennings v. Am. Postal Workers Union*, 672 F.2d 712, 715 (8th Cir. 1982) (stating that "[a]n uncounseled plaintiff should not be penalized for the EEOC's mistake of law."); *Tsai v. Rockefeller Univ.*, 137 F. Supp. 2d 276, 283 (S.D.N.Y. 2001) (holding that affirmative misconduct by the EEOC warranted equitable tolling). The Sixth Circuit, however, has cautioned repeatedly that equitable tolling relief should be granted sparingly. *Amini*, 259 F.3d at 500.

To qualify for equitable tolling, plaintiff must prove that she reasonably lacked notice of the filing requirement. The Sixth Circuit considers the following five factors in making this determination: 1) lack of actual notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirements for filing [her] claim. *Id*.

Defendants argue that plaintiff gained constructive knowledge of the filing requirement when she consulted with an unnamed Toledo attorney in July, 2003. *See Hamel v. Prudential Ins. Co.,* 640 F. Supp. 103, 105 (D. Mass. 1986) (holding that a plaintiff making an equitable tolling claim must show that she had not retained counsel prior to a late filing). Plaintiff contends that she consulted numerous attorneys but had not retained counsel prior to July 31, 2003.

The record before me contains a letter dated July 14, 2003, to CRA from an attorney purporting to represent plaintiff, and a subsequent affidavit from the same attorney contradicting the letter's assertion. Based on this evidence, I cannot find that plaintiff was represented by counsel and that she gained actual or constructive knowledge of the filing requirement through the representation of counsel.

As to the remaining factors, Plaintiff's diligence in pursuing her rights is reflected in the comprehensive answers she provided on the EEOC questionnaire. I am also not persuaded that either

defendant would be prejudiced by the grant of equitable relief. Finally, plaintiff acted reasonably in relying on the representations of an EEOC agent as to the legal requirements of filing her claim.

On these facts, a reasonable trier of fact could find that plaintiff had not retained counsel and was thus unaware of the filing deadline. Accordingly, I find that plaintiff is entitled to equitable tolling relief. An analysis of the merits of using an intake questionnaire as a substitute for a formal charge is thus necessary.

### b. Intake Questionnaire as a Charge

To establish an EEOC intake questionnaire as a valid charge, plaintiff must show two elements. First, plaintiff must satisfy the Title VII requirements that a charge be verified and in writing, containing all such information as the EEOC requires. 42 U.S.C. § 2000e-5(b). Second, plaintiff must show that the "circumstances of the case would convince a reasonable person that the charging party manifested her intent to activate the administrative process." *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1321 (11th Cir. 2001); *see also Williams v. Gen. Elec.*, 269 F. Supp. 2d 958, 964 (S.D. Ohio 2003).

### i. Title VII Requirements

The information submitted by plaintiff in response to the intake questionnaire is comprehensive. Plaintiff exhaustively answered all of the questions posed, and consequently, the intake questionnaire contains sufficient information to qualify under the EEOC regulations for a valid charge as listed in 29 C.F.R. § 1601.12(a).[2]

---

[2]
29 C.F.R. § 1601.12(a) states that each charge should contain the following:
  (1) The full name, address and telephone number of the person making the charge . . . ;
  (2) The full name and address of the person against whom the charge is made . . . ;
  (3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices . . . ;
  (4) If known, the approximate number of employees of the respondent employer . . . ; and

Title VII, however, also requires that a charge be verified. 42 U.S.C. § 2000e-5(b). To be verified, a charge must be "sworn to or affirmed before a notary public . . . or other person duly authorized by law to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3(a).

In this case, at the end of the intake questionnaire plaintiff signed the following declaration: "I certify that the above is true to the best of my ability." (Doc. 41-11 at 4.) This signing did not include a notarization of any kind. While unsworn statements may satisfy Title VII verification requirements if given under penalty of perjury, the declaration signed by plaintiff does not contain this necessary language. Therefore, I am not convinced that the questionnaire filed on July 31, 2003, satisfies the verification requirement.

### ii. Intent to Activate the Act's Machinery

Plaintiff must also show that the circumstances of the case would convince a reasonable person that she manifested her intent to activate the machinery of Title VII by filing the EEOC questionnaire. *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1240 (11th Cir. 2004); *Williams*, 269 F. Supp. 2d at 964. Three primary factors are considered in this inquiry: 1) communication between plaintiff and the EEOC; 2) language on the EEOC questionnaire form itself; and 3) the EEOC's response to the receipt of the completed questionnaire. *Bost*, 372 F.3d at 1240.

Plaintiff, relying heavily on the *Williams* case, argues that submission of the questionnaire manifested her intent to activate the Act's machinery. In *Williams*, the EEOC responded to plaintiff's questionnaire with a letter dismissing the EEOC action and issuing a Notice of Right to Sue. 269 F. Supp. 2d at 965.

---

(5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged and, if so, the date of such commencement and the name of the agency.

Since the letter did not indicate to plaintiff that he needed to file a charge to preserve the right to sue, the court held that plaintiff could reasonably assume that no further action was necessary. *Id.*

In this case, however, there is no evidence that the EEOC instructed plaintiff in any way about the questionnaire, including the adequacy of the questionnaire as a charge. To the contrary, the cover letter accompanying the questionnaire clearly distinguishes the questionnaire from a charge:

> Please keep in mind that a *charge* of employment discrimination must be filed . . . within 300 days of the alleged discrimination. . . . If upon receipt of your *questionnaire*, the information provided is sufficient for us to draft your *charge*, we will do so and mail the *charge* to you for your review and signature.

(Doc. 59-3 (emphasis added).)

Plaintiff filed her formal charge on September 16, 2003. This indicates that plaintiff understood the distinction between a questionnaire and a formal charge and that the questionnaire was a preliminary filing. *Bost,* 372 F.3d at 1241; *Diez v. Minn. Mining & Mfg. Co.*, 88 F.3d 672, 677 (8th Cir. 1996); *Dorn v. Gen. Motors Corp.*, 2005 WL 977052, *6 n.7 (6th Cir. Apr. 28, 2005). The EEOC did not notify the defendants of plaintiff's charge until after the formal charge had been filed. This suggests that the EEOC did not consider the questionnaire to be a formal charge. *Bost*, 372 F.3d at 1241.

Because the circumstances do not indicate plaintiff's intent to activate the machinery of Title VII, allowing the questionnaire to substitute for a formal charge would be improper. Thus, plaintiff's EEOC filing was untimely and summary judgment in favor of both defendants shall be granted as to plaintiff's ADA claims.[3]

## 2. "Employer" Under the ADA

---

[3]

In view of the possibility of an appeal, I address the merits of plaintiff's claim in the following dictum.

DaimlerChrysler contends that it is not liable to plaintiff under the ADA because it does not satisfy the definition of an "employer" under the statute. Plaintiff counters that DaimlerChrysler and CRA were both employers under the statute.

The parties do not dispute that CRA, not DaimlerChrysler, was plaintiff's direct employer. While a direct employment relationship provides the usual basis for liability under the ADA, courts have recognized three doctrines by which a defendant that does not directly employ a plaintiff may nonetheless be considered an "employer" under the ADA. *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 993 (6th Cir. 1997).[4]

The Sixth Circuit outlined these three approaches:

> In one approach, courts examine whether two entities are so interrelated that they may be considered a "single employer" or an "integrated enterprise." *See, e.g., York v. Tennessee Crushed Stone Ass'n*, 684 F.2d 360 (6th Cir. 1982). In another approach, courts consider whether one defendant has control over another company's employees sufficient to show that the two companies are acting as a "joint employer" of those employees. *See, e.g., Carrier Corp. v. NLRB*, 768 F.2d 778 (6th Cir. 1985); *Rivas v. Federacion de Asociaciones Pecuarias de Puerto Rico*, 929 F.2d 814 (1st Cir. 1991). A third approach examines whether the person or entity that took the allegedly illegal employment action was acting as the agent of another company, which may then be held liable as the plaintiffs' employer. *See, e.g., Deal v. State Farm County Mut. Ins. Co. of Texas,* 5 F.3d 117 (5th Cir. 1993); *Fike v. Gold Kist, Inc.,* 514 F.Supp. 722 (N.D.Ala.), *aff'd,* 664 F.2d 295 (11th Cir. 1981).

*Id.* (footnote omitted).

DaimlerChrysler contends that it is not plaintiff's "employer" under the "single employer" or "integrated enterprise" doctrine. Under this approach, courts examine four factors: "(1) interrelation of

---

[4]

In determining whether DaimlerChrysler is an "employer" under the ADA, it is appropriate for me to rely on case law developed in the ADA, ADEA, Title VII, and labor relations contexts. *Swallows*, 128 F.3d at 992-93 n.2, n.3.

operations, i.e., common offices, common record keeping, shared bank accounts and equipment; (2) common management, common directors and boards; (3) centralized control of labor relations and personnel; and (4) common ownership and financial control." *Swallows*, 128 F.3d at 994 (citing *York v. Tennessee Crushed Stone Ass'n,* 684 F.2d 360, 362 (6th Cir. 1982)).

I agree with DaimlerChrysler that, based on the record before me, DaimlerChrysler and CRA do not constitute a single employer. DaimlerChrysler and CRA do not have common offices, record keeping, bank accounts, or equipment. The entities do not share management or common ownership.

Plaintiff, however, has set forth sufficient facts from which a reasonable juror may conclude that DaimlerChrysler and CRA acted as a "joint employer" of plaintiff.

A "joint employer" relationship exists "'where two or more employers exert significant control over the same employees – where from the evidence it can be shown that they share or co-determine those matters governing essential terms and conditions of employment . . . .'" *Carrier Corp. v. NLRB*, 768 F.2d 778, 781 (6th Cir. 1985) (quoting *NLRB v. Browning-Ferris Indus. of Pennsylvania, Inc.,* 691 F.2d 1117, 1124 (3d Cir.1982)); *see also Swallows*, 128 F.3d at 993 n.4 (citing *Browning-Ferris,* 691 F.2d at 1123) ("The basis of the joint employer finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer. Thus, the 'joint employer' concept recognizes that the business entities involved are in fact separate but that they *share* or co-determine those matters governing the essential terms and conditions of employment.").

A number of factors are relevant to the determination of whether an entity exercised sufficient control over employees to constitute a joint employer: "the supervision of the employees' day to day

activities, authority to hire or fire employees, promulgation of work rules and conditions of employment, work assignments, and issuance of operating instructions." *G. Heileman Brewing Co., Inc. v. N.L.R.B.*, 879 F.2d 1526, 1531 (7th Cir. 1989) (quoting *W.W. Grainger, Inc. v. NLRB*, 860 F.2d 244, 247 (7th Cir. 1988)).

In addition to these considerations, public policy provides further support for the result reached. Where an individual is subject to the control of two independent masters, either or both of them should not be allowed to use their personal contractual arrangements as a basis for foreclosing recovery to that individual. Moreover, the protections afforded by legislation, such as the ADA and its underlying policies, are promoted and enhanced by applying a liberal, rather than an overly conservative standard, for determining the individual's employer.

In this case, DaimlerChrysler entered into a contract with CRA to provide medical care to the Toledo Jeep Assembly Plants in Toledo, Ohio. Performing under that contract, CRA contracted with plaintiff to serve as a full-time physician and provide afternoon/evening shift coverage to the Jeep Parkway, Toledo North, and Stickney Avenue plants. Both CRA and DaimlerChrysler, under the terms of plaintiff's contract, were to provide plaintiff with the necessary "support, supplies, equipment, and facilities" to perform her job.

DaimlerChrysler controlled plaintiff's day-to-day activities as a plant physician. Plaintiff's hours were set by DaimlerChrysler's Plant Medical Director and DaimlerChrysler's Plant Human Resource Manager. Plaintiff was required to follow DaimlerChrysler's policies and procedures. She was reprimanded by DaimlerChrysler officials for occasionally disregarding the particular policy against examining and treating plant employees for non-occupational injuries and illnesses, except in an emergency.

12

Pursuant to plaintiff's contract, moreover, DaimlerChrysler had the ability to cause plaintiff's termination by "withdrawing [plaintiff's] privileges or denying admittance to the facility." (Doc. 41-9 at 2.) DaimlerChrysler exercised this provision when a DaimlerChrysler official informed CRA that it no longer wanted plaintiff to work at its plant.

In light of these facts, the record contains sufficient evidence from which a reasonable juror could conclude that DaimlerChrysler exercised significant control over the plaintiff to be deemed a joint employer.

### 3. Merits of Plaintiff's ADA Claim Against DaimlerChrysler

DaimlerChrysler contends that it is entitled to summary judgment on plaintiff's claim because: 1) plaintiff was not a qualified individual with a disability; and 2) DaimlerChrysler articulated a legitimate, non-discriminatory reason for requesting plaintiff's removal, and plaintiff cannot show that the proffered reason was a pretext for discrimination.

### a. Prima Facie Case of Discrimination

The ADA prohibits an employer from discriminating against a "qualified individual with a disability" because of that individual's disability. 42 U.S.C. § 12112(a). A prima facie case of disability discrimination requires the plaintiff to establish that he or she "(1) . . . is an individual with a disability; (2) . . . is otherwise qualified to perform the job requirements, with or without reasonable accommodations; and (3) . . . was discharged solely by reason of his handicap." *Williams v. London Utility Comm'n*, 375 F.3d 424, 428 (6th Cir. 2004) (citing *Cotter v. Ajilon Servs.*, 287 F.3d 593, 598 (6th Cir. 2002)); *see also Gilday v. Mecosta County*, 124 F.3d 760, 762 (6th Cir. 1997).

"Disability" is defined to include "a physical or mental impairment that substantially limits one or more major life activities...." 42 U.S.C. § 12102(2)(A).

The EEOC defines "substantially limits" in 29 C.F.R. § 1630.2(j) as:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

"Major life activity" includes "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

In this case, plaintiff alleges that she has a mental impairment (i.e., bipolar disorder or depressive disorder) that substantially limits one or more major life activities. Plaintiff admits, however, that she can function with medication. In light of this admission, defendant contends that plaintiff is not disabled.

The Supreme Court has held that "'if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures-both positive and negative-must be taken into account when judging whether that person is substantially limited in a major life activity and thus disabled under the Act.'" *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 854 -55 (6th Cir. 2001) (quoting *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 482 (1999)).

The Court went on to explain, however, that "individuals who take medicine to lessen the symptoms of an impairment so that they can function [may] nevertheless remain substantially limited." *Sutton*, 527 U.S. at 488; *see also J.H. Routh*, 246 F.3d at 855 ("Controlling a disability does not necessarily mean removing a disability." Thus, the use or nonuse of a corrective measure does not determine whether an individual is disabled; rather, that determination depends on whether the limitations an individual faces are in fact substantially limiting. *Sutton*, 527 U.S. at 488.

14

Plaintiff contends that her ability to function with medication is limited when she is under "severe stress." (Doc. 46 at 8.)  Thus, plaintiff contends that her disorder is not entirely controlled by medication.[5]

In *J.H. Routh*, the employee at issue was an epileptic who was able to function with medication. 246 F.3d at 851. The employee still suffered from seizures, but was able to predict them and could step away from his work momentarily without causing problems. *Id*.

In contrast to *J.H. Routh*, the severity or frequency of plaintiff's inability to function with medication when under "severe stress" is unknown. Thus, on the facts before me, plaintiff has not shown that her bipolar disorder or depressive disorder substantially limits one or more major life activities.

In the alternative, plaintiff argues that she qualifies as having a disability because DaimlerChrysler regarded her as being disabled. An individual is regarded as having such an impairment when he or she:

(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) Has [no physical or mental impairment] but is treated by a covered entity as having a substantially limiting impairment.

---

[5]

Plaintiff also submitted an affidavit in which she states that, without medication, she cannot perform major life activities. (Doc. 46-5.) Defendants have moved to strike this affidavit on the grounds that it is inconsistent with her prior deposition testimony. (Doc. 52, Doc. 53.)

Without ruling on those motions, plaintiff's testimony as to her ability to perform major life activities when not taking medication is irrelevant to this inquiry. The determination of whether plaintiff is disabled must properly consider the actual realities of plaintiff's condition (i.e., that she takes medication which seemingly, for the majority of the time, controls her disorder) and not infrequent situations in which her clinicians intentionally discontinued or reduced her dosage, presumably for purposes of regulating dosage rates and amounts.

29 C.F.R. § 1630.2; *see also Sutton,* 527 U.S. at 489 ("One may come under the 'regarded as' definition of disability in either of two ways: (1) when his employer mistakenly believes he has a physical impairment that substantially limits one or more major life activities; or (2) when his employer mistakenly believes that an actual nonlimiting impairment substantially limits one or more major life activities.")

Thus, for an employee to fall within the "regarded as" category, her employer must "entertain misperceptions about the individual." *Sutton,* 527 U.S. at 489. The purpose of this category is to protect individuals "rejected from a job because of the myths, fears and stereotypes associated with disabilities." *Ross v. Campbell Soup Co.*, 237 F.3d 701, 708 (6th Cir. 2001) (citing *Sutton,* 527 U.S. at 489).

Under this inquiry, evidence of the employer's state of mind that would ordinarily be used to prove motive or discriminatory intent, including any evidence that the employer created a pretextual reason for the employee's termination may be relevant. *Ross*, 237 F.3d at 708.

In this case, plaintiff informed DaimlerChrysler officials about the existence of her bipolar disorder shortly after beginning employment. Plaintiff has also testified that immediately prior to her termination, DaimlerChrysler's medical Director, Dr. Teresa Bartlett, stated to plaintiff that her bipolar condition was flaring up and that as a result, she could not be trusted to work with DaimlerChrysler patients. Plaintiff contends that, at the same time, Dr. Bartlett also stated that plaintiff must have been crazy when she drafted the Novena email.

Based on this evidence, a reasonable juror could find that defendant regarded plaintiff as disabled under the ADA.

As to the other elements, DaimlerChrysler does not dispute, and the evidence shows, that plaintiff satisfies the remaining two elements of a disability discrimination claim. Consequently, plaintiff has produced

16

evidence sufficient to establish a prima facie case of discrimination against DaimlerChrysler.

### b. Legitimate Non-Discriminatory Reason for Termination

Plaintiff has made out a prima facie case of discrimination based on disability. If the plaintiff sets forth a prima facie case, then the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the termination. *Williams*, 375 F.3d at 428.

Daimler Chrysler contends that plaintiff was fired because: 1) throughout her employment, plaintiff did not follow instructions and procedures; 2) plaintiff sent the Novena email and then failed to recognize the inappropriateness of the message; and 3) plaintiff's behavior demonstrated unacceptable judgment for someone in her position of responsibility.

I agree that these are legitimate business reasons for terminating plaintiff.

### c. Pretext

Once the defendant sets forth a non-discriminatory reason for the termination, the burden shifts back to the plaintiff to prove that the stated reason was a pretext for unlawful disability discrimination. *Williams*, 375 F.3d at 428 (citing *Martin v. Barnesville Exempted Vill. Sch. Dist. Bd. of Educ.,* 209 F.3d 931, 934 (6th Cir. 2000)).

A plaintiff may establish pretext by showing that the reason offered by the defendant: 1) has no basis in fact; 2) did not actually motivate the decision to terminate plaintiff, which requires additional evidence of discrimination, or 3) was insufficient to warrant the decision to terminate plaintiff, which usually requires a showing that others engaged in similar behavior but did not suffer the same fate. *Kocsis v. Multi-Care Management, Inc.,* 97 F.3d 876, 883 (6th Cir.1996) (citing *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994)).

The same evidence that I relied on in determining whether DaimlerChrysler regarded plaintiff as disabled is relevant here. Plaintiff has presented evidence that immediately prior to her termination, DaimlerChrysler's medical Director, Dr. Bartlett, stated to plaintiff that her bipolar condition was flaring up and that as a result, she could not be trusted to work with DaimlerChrysler patients. Dr. Bartlett also allegedly commented at this time that plaintiff must have been crazy when she drafted the Novena email.

On these facts alone, a reasonable juror could find that defendant's proffered reasons did not actually motivate its decision to terminate plaintiff.[6] Accordingly, DaimlerChrysler's motion for summary judgment on the merits of plaintiff's ADA claim shall be denied.

### 4. Merits of Plaintiff's ADA Claim Against CRA

CRA contends that plaintiff's claim fails because she was: 1) not a "qualified individual with a disability" and was never "regarded as disabled;" and 2) CRA had a legitimate, non-discriminatory basis for her termination, which plaintiff cannot show is a pretext for discrimination.

### a. Prima Facie Case

As stated previously, plaintiff alleges both that she has a mental impairment (i.e., bipolar disorder

---

[6]

Plaintiff also submitted an affidavit from Father Robert J. Wilhelm, Pastor of our Lady of Perpetual Help Catholic Church in Toledo, Ohio. Plaintiff contends that the affidavit serves to establish that defendant's reasons for plaintiff's termination were pretextual as Father Wilhelm states: "The email appears to be a cordial note of genuine concern on the part of Dr. Olynyk for the good health, spiritual, physical and mental, of Mr. Maxon." (Doc. 46-4 at 1.) Father Wilhelm continued to explain: "She seemingly did so in the context of her religious beliefs in a particular practice familiar to Roman Catholics, namely, offering a Novena, which she accurately describes . . . ." (*Id*.)

Defendants have moved this court to strike Father Wilhelm's affidavit on the grounds that it is without foundation and is improperly speculative. Without ruling on those motions or considering the affidavit, I believe plaintiff has set forth sufficient evidence of pretext to render the issue a jury question.

or depressive disorder) that substantially limits one or more major life activities, and in the alternative, that she qualifies as having a disability because CRA regarded her as being disabled.

For the reasons stated above, the record does not show that plaintiff's bipolar disorder or depressive disorder substantially limits one or more major life activities. Plaintiff has, however, raised a genuine issue as to whether CRA regarded her as being disabled.

Plaintiff disclosed her mental impairment during the interview process with CRA. Plaintiff's CRA contact, Tom Burden, testified repeatedly that he believed the Novena email reflected a flare up of plaintiff's bipolar condition. (Doc. 38 at 33-26, 46.) Plaintiff also produced an email from Burden to Dr. Bartlett, in which Burden discussed plaintiff's termination. In the email, Burden admitted telling plaintiff that he was very concerned about her "mental health status" and recommended that "she seek professional help." (Doc. 46-13.)

Based on this evidence, a reasonable juror could find that CRA regarded plaintiff as disabled under the ADA.

As to the other elements, CRA does not contend that plaintiff fails to satisfy the remaining elements of a disability discrimination claim. Consequently, plaintiff has produced evidence sufficient to establish a prima facie case of discrimination against CRA.

### b. Legitimate Non-Discriminatory Reason

CRA has set forth legitimate business reasons for terminating plaintiff: 1) plaintiff's inappropriate conduct in sending the Novena email; and 2) DaimlerChrysler's revocation of plaintiff's privileges at the plant, which triggered a termination clause in plaintiff's employment contract.

### c. Pretext

19

The same evidence that I relied on in determining whether CRA regarded plaintiff as disabled is relevant when considering whether CRA's reasons for her termination are pretext for disability discrimination. As previously discussed, the record contains evidence that Plaintiff's CRA contact, Burden, testified repeatedly that he believed the Novena email reflected a flare up of plaintiff's bipolar condition. Additionally, in an email to Dr. Bartlett discussing plaintiff's termination, Burden admitted telling plaintiff that he was very concerned about her "mental health status" and recommended that "she seek professional help." (Doc. 46-13.)

On these facts, a reasonable juror could find that defendant's proffered reasons did not actually motivate its decision to terminate plaintiff. Accordingly, CRA's motion for summary judgment on the merits of plaintiff's ADA claim shall be denied.

### 5. Breach of Contract Claim Against CRA

CRA also seeks summary judgment on plaintiff's claim for breach of contract. CRA argues plaintiff's claim fails because plaintiff was terminated pursuant to the language of the contract.

The contract between CRA and plaintiff provided: "[T]his Agreement is effective only upon receipt by CRA of notification of acceptance of PHYSICIAN by DaimlerChrysler Corporation. *Should DaimlerChrysler Corporation rescind this acceptance by withdrawing privileges or denying admittance to the facility, this Agreement is terminated immediately.*" (Doc. 41-9 at 2.) (emphasis added).

Thus, CRA contends, when DaimlerChrysler withdrew plaintiff's privileges at the plant, plaintiff's contract immediately terminated.

Plaintiff has not opposed defendant's contentions. In the absence of any argument to the contrary,

20

CRA's motion for summary judgment on plaintiff's breach of contract claim shall be granted.

## Conclusion

In light of the foregoing, it is

ORDERED THAT:

1) DaimlerChrysler's motion for summary judgment be, and the same hereby is, granted as to plaintiff's ADA claim.

2) CRA's motion for summary judgment be, and the same hereby is, granted as to plaintiff's ADA claim and state law claim for breach of contract.

So ordered.

/s/James G. Carr
James G. Carr
Chief Judge